# Supreme Court of Pennsylvania
## Court of Common Pleas
### Civil Cover Sheet

Fayette _____ County

| | For Prothonotary Use Only: | TIME STAMP |
|---|---|---|
| | Docket No: 2415 of 2017 GD | |

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

**Commencement of Action:**
- ☒ Complaint
- ☐ Writ of Summons
- ☐ Transfer from Another Jurisdiction
- ☒ Petition
- ☐ Declaration of Taking

| Lead Plaintiff's Name: Alton D. Brown (A/K/A Political Prisoner # DL4686) | Lead Defendant's Name: Rhonda A. House |
|---|---|

| **Are money damages requested?** ☒ Yes ☐ No | **Dollar Amount Requested:** (check one) | ☐ within arbitration limits ☒ outside arbitration limits |
|---|---|---|

| **Is this a Class Action Suit?** ☐ Yes ☒ No | **Is this an MDJ Appeal?** ☐ Yes ☒ No |
|---|---|

Name of Plaintiff/Appellant's Attorney: _____

☒ **Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)**

**Nature of the Case:** Place an "X" to the left of the **ONE** case category that most accurately describes your **PRIMARY CASE.** If you are making more than one type of claim, check the one that you consider most important.

**TORT** (do not include Mass Tort)
- ☒ Intentional
- ☐ Malicious Prosecution
- ☐ Motor Vehicle
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability (does not include mass tort)
- ☒ Slander/Libel/ Defamation
- ☐ Other:

**MASS TORT**
- ☐ Asbestos
- ☐ Tobacco
- ☐ Toxic Tort - DES
- ☐ Toxic Tort - Implant
- ☐ Toxic Waste
- ☐ Other:

**PROFESSIONAL LIABLTY**
- ☐ Dental
- ☐ Legal
- ☒ Medical
- ☐ Other Professional:

**CONTRACT** (do not include Judgments)
- ☒ Buyer Plaintiff
- ☐ Debt Collection: Credit Card
- ☐ Debt Collection: Other

- ☐ Employment Dispute: Discrimination
- ☐ Employment Dispute: Other

- ☐ Other:

**REAL PROPERTY**
- ☐ Ejectment
- ☐ Eminent Domain/Condemnation
- ☐ Ground Rent
- ☐ Landlord/Tenant Dispute
- ☐ Mortgage Foreclosure: Residential
- ☐ Mortgage Foreclosure: Commercial
- ☐ Partition
- ☐ Quiet Title
- ☐ Other:

**CIVIL APPEALS**
Administrative Agencies
- ☐ Board of Assessment
- ☐ Board of Elections
- ☐ Dept. of Transportation
- ☐ Statutory Appeal: Other

- ☐ Zoning Board
- ☐ Other:

**MISCELLANEOUS**
- ☐ Common Law/Statutory Arbitration
- ☒ Declaratory Judgment
- ☒ Mandamus
- ☐ Non-Domestic Relations Restraining Order
- ☐ Quo Warranto
- ☐ Replevin
- ☐ Other: Injunction

TRUE AND ATTESTED COPY

_Kim Capuzzi Prothonotary_
Prothonotary

**Updated 1/1/2011**

**REINSTATED**

Date _May 16 2017_

_Nina Caruso Franchner_
Prothonotary

**REINSTATED**

Date _February 12 2018_

_Nina Caruso Franchner_
Prothonotary

**REINSTATED**

Date _July 2 2018_

_Nina Caruso Franchner_
Prothonotary

**REINSTATED**

Date _August 2 2018_

_Nina Caruso Franchner_
Prothonotary

IN THE COURT OF COMMON PLEAS OF

COUNTY, PENNSYLVANIA

POLITICAL PRISONER #DL4686
(A/K/A Alton D. Brown),

      Plaintiff,

  Vs.

RHONDA A. HOUSE, et.al.,

      Defendants.

No. 2395 of 17

## NOTICE TO PLEAD

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after the complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you without further notice for any money claims in the complaint or for any other claim or relief requested by the plaintiff. You may loss money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

| NAME | |
| --- | --- |
| ADDRESS | |
| PHONE | |

FILED
2017 NOV -9 AM 10:27
FAYETTE COUNTY
PROTHONOTARY

Political Prisoner #DL4686
(A/K/A Alton D Brown)
SCI-Fayette
50 Overlook Drive
La Belle, PA. 15450

Pro se Complaint in Mandamus/Equity

POLITICAL PRISONER #DL4686
(A/K/A Alton Brown),
                    Plaintiff,

            vs.

RHONDA A. HOUSE; TOM WOLF (Governor);
NEDRA GREGO (Chief Health Care Administrator);
L. CUTLER (LIBRARIAN); M. OPPMAN (Business
Office Manager); MAIL ROOM SUPERVISOR DORINA
VARNER (Chief Grievance Officer); DANIEL BURNS
(Deputy Secretary); JOHN E. WETZEL (SECRETARY);
MARK CAPOZZA (Supt. Fayette); TRACEY SHAWLEY
(Grievance Coordinator); ROBERT D. GILMORE (SCI-
Greene Superintendent); CORRECT CARE SOLUTIONS, LLC (
Contract Healthcare Provider); PAUL NOEL (Pa. D.O.C. Chief
Medical Director); DR JAY COWAN (Medical Director, CCS);
JOSEPH J. SILVA (Chief Health Care Administrator); WM.
NICHOLSON (Chief Health Care Administrator); MATHEW
MICELI (Medical Oncology); MARGARET GORDAN (Pa. D.O.C.
Dietician); BYUNGHAK JIN; M. HAINES; S. BUZAS
RICH WENHOLD (Pa. D.O.C. ICC); T. POZIVIAK (C.O.I);
FACILITY INFECTION CONTROL NURSE (SCI-Greene); FACILITY
INFECTION CONTROL NURSE (SCI-Fayette); DIRECTOR DOE (
Pa. D.O.C. Office of Population Management); ROBERT VALLEY
(Medical Director); DARLA COWDEN (Physician Assistant),
NATALIE AUSTIN; MIKE HICE; LORI RIDINGS; J.H. DUPONT,

IN THE COURT OF COMMON PLENS OF
DAUPHIN COUNTY, PENNSYLVANIA
FAYETTE

No _____
( JURY TRIAL DEMANDED)

COMPLAINT IN MANDAMUS & EQUITY

Jurisdictional Statement

1. This Court has original jurisdiction over this matter pursuant to 42 Pa.C.S. § 931.

PARTIES

2. Plaintiff Political Prisoner #DL4686 (A/K/A Alton D. Brown), is a political prisoner that is presently confined at SCI-Fayette, 50 Overlook Drive, La Belle, PA. 15150.

3. Defendants Varner, Wetzel, Burns, Noel, Silva, Gordon, Wenhold, and Director Doe, are employed at the Pennsylvania Department Of Corrections (Pa D.O.C) Central Office at 1920 Technology Parkway, Mechanicsburg, PA. 17050.

4. Defendants House, Grego, Cutter, Oppman, Mail Room Supervisor, and Facility Infection Control Nurse, are employed with the Pa D.O.C., at SCI-Fayette, 50 Overlook Drive, La Belle, PA. 15150 (Ditto: Haines and Buzas).

5. Defendants Gilmore, Shawley, and Nicholson, are employed with Pa D.O.C. at SCI-Greene, 169 Progress Drive, Waynesburg, PA. 15370.

6. Defendants Correct Care Solutions (CCS), Jin Valley, Cowden, and Miceli, are contract employees with Pa D.O.C., located at 1283 Murfreesburg, Road., Suite 500, Nashville, TN. 37217. Defendant Cowden is also employed with CCS.

6A. Defendant Wolf is the Governor of Pennsylvania, at 225 Main Capitol, Harrisburg, PA. 17120.

DETERMINATIONS SOUGHT TO BE REVIED

7. Plaintiff was transferred from SCI-Greene to SCI-Fayette on August 9, 2017 for the sole purpose of sabotaging his attempts to obtain medical care for prostate cancer and other serious medical illnesses, sabotage his active litigation, take pressure off the Greene County Judicial District, and continue their major retaliatory campaign that begun in earnest in July, 2013, after his transfer to SCI-Smithfield.

8. The supervising Defendants has failed and refused to enforce its own rules and regulations, and the Pennsylvania and United States Constitutions, that would have provided Plaintiff substantial protection from the retaliatory abuses and punishments

-2-

that have been repeatedly inflicted upon him during his confinement at SCI-Fayette by their employees, who are acting pursuant to Pa. D.O.C.'s retaliation policy, practice, custom.

## STATEMENT OF FACTS

9. During his twenty (20) years of confinement in the Pa. D.O.C. Plaintiff has demonstrated a so-called litigious and iconoclastic behavior, and is a well-known prisoner rights activist.

10. Plaintiff has been housed in Pa. D.O.C.'s various solitary/isolation units during his entire incarceration, which is consistent with his assignment to political prisoner status.

11. Also consistent with his political prisoner status is the facts that Plaintiff was sentenced to a total of 216 years for crimes he did not commit in <u>gross</u> violation of his due process rights under both the Pennsylvania and United States Constitution.

12. Plaintiff's attempts to extricate himself from his unlawful convictions has been repeatedly sabotaged, in whole or in part, by Pa. D.O.C. and staff, and is ongoing.

13. Plaintiff had over forty (40) active legal matters pending in various Pennsylvania State and federal courts, and approximately twenty (20) active grievance/appeals, when he transferred to SCI-Fayette on 8/9/17.

14. Defendant Wetzel has a well-established and effective retaliation policy/practice that is routinely employed against prisoners whom they deem to be troublemakers and/or potential troublemakers, including but not limited to political/quasi-political prisoners, prisoners with litigious/iconoclastic behaviors, prisoner rights activist, prisoners with assaultive histories against staff, and those who have convictions involving children, law enforcement, or are political in nature.

15. Defendants have multiple tactics at their disposal to inflict punishments on isolated prisoners, including but not limited to the following tactics that have been employed against Plaintiff: indefinite solitary confinement, stress/anxiety production; denial/delay/inadequate medical care; disrespectful medical care designed to discourage

- 3 -

prisoners from submitting to same; punitive meals; contamination of meals; unsanitary meals; denial of meaningful access to the prison grievance system; denial of meaningful access to the Inmate Abuse Complaint processes; denial of meaningful access to the Inmate Disability Accommodation Request processes; bogus misconduct reports and convictions; personal and legal mail censoring; confiscation/holding of incoming and outgoing legal mail; sabotaging outside support systems; denial of access to property; confiscation of personal and legal property; denial of access to legal information; falsification of medical and custodial records; and physical/psychological abuse.

16. Stress production is a favorite and effective weapon for Defendant's retaliation campaigns, especially while the victim is confined to a cage 24/7.

17. Stress is a key component of psychological torture and brainwashing.

18. Stress is a dangerous weapon against victims who have serious chronic medical illness.

19. Studies have shown that abuse has a direct impact on the victim's quality of life and mortality. Abuse hastens the senior's physical and mental decline and significantly shortens their lifespan. According to the National Council on Aging, the risk of death for elders who have been mistreated is 300 times higher than those who have not been.

20. The National Center for Elder Abuse defines abuse as "a series of intentional actions taken to cause harm or create a serious risk of harm to a vulnerable senior." Elder abuse takes many forms, these include:

(i) Verbal Abuse: Yelling, threatening or ridiculing the older person;

(ii) Psychological Abuse: isolating or ignoring them or making them fearful;

(iii) Financial Abuse: misusing, or taking the elderly person's money or possessions without their consent;

(iv) Neglect: failing to address a person's basic needs by withholding food, water, needed medications, or allowing their health problems to worsen;

(v) Physical Abuse: striking, pushing or otherwise inflicting pain on the elder person.

(vi) Sexual Abuse: forcing the elderly person to engage in unwanted sexual activities for one's own gratification or to embarrass them.

21. Plaintiff is routinely subjected to the attacks mentioned in paragraph No. 20(i-vi) by the Defendants or those working in concern with them.

22. According to Health Experts at the Mayo Clinic and Natual Health Magazine; stress is characterized by feelings of fear, dread, and anxiety, accompanied by a variety of physical side effects, including muscle tension, changes in heart rate, blood pressure, respiration, harmonal balance, metabolism, and immune functions; and in elevations of adrenaline and norepinephrine. Chronic stress can cause numerous mental and physical disorders, including anxiety, depression, dyspepsia, palpitations, muscular aches and pains, depressed immune response, hormone imbalance, and kidney disease. Stress can produce symptoms and lead to illness. Stress can be short-term (acute) or long term (chronic), and the effects of stress can accumulate over time. When a person experience stress — especially severe stress — the physical response occurs to meet the energy demands of the situation. The heart beats faster, breathing quickens, and blood pressure rises. In addition, blood flow to the brain and large muscle increases. After the threat passes the body begins to relax again. A person may be able to handle an occasional stressful event, but when it happens regularly, the effects multiply and compound over time. Many of the physical reactions that accompany stress can damage long-term health by contributing to physical and emotional illnesses. Stress may aggravate an existing health problem. Or it may trigger an illness if you're already at risk of that particular condition. The hormone cortisol produced during the stress response may suppress the immune system, increase the susceptibility to infectious disease. Studies suggest that the risk of bacteria infections such as tuberculosis and group A streptococcal disease increases during stress. Stress may also make you prone to upper respiratory viral infections. During acute stress your

- 5 -

your heart beats quickly, which makes you more suscepible to heart rhythm irregularities and a type of chest pain called angina. What's more, if you are a "hot reactor" [as is the Plaintiff], acute stress may add to your risk of a heart attack. Hot reactors exhibit extreme increases in heart rate and blood pressure in response to daily stress. These surges may gradually injure your coronary arteries and heart. Increased blood clotting from persistent stress also can put you at risk of a heart attack or stroke. Stress may worsen symptoms of any of the following conditions [that Plaintiff is inflicted with]:

(i) <u>Asthma</u>: A stressful setuation can make your airways overreactive, precipitating as asthma attack.

(ii) <u>Gastrointestinal problems</u>: stress may trigger or worsen symptoms associated with some gastrointestinal conditions.

(iii) <u>Chronic pain</u>: Stress can heighten your body's pain response, making chronic pain associated with conditions such as arthritis, fibromyalgia or a back injury more difficult to manage.

(iv) <u>Mental Health Disorders</u>: stress may trigger depression in people who are prone to the disorder. It may worsen symptoms of other mental health disorders such as anxiety or substance abuse.

(v) <u>Cancer</u>: Stress may effect immunity in a number of ways, but primarily through the endocrine system by causing secretion of immunity-depressing hormones. And, depressed response hinders the body's natural healing abilities; Additionally, Lymph vessels range throughout the body. At intervals along these vessels are lymph nodes, which are longer bodies of lymphatic tissue that contains lymphocytes (white blood cells), antibodies, and other immune constitutes. Bacteria, viruses, cancer cells, and biological waste enter these lymphnodes and are destroyed by an array of immune cells and antibodies awaiting them in the nodes. Stress causes muscle tension, which prevents lymph from moving freely along the vessels. Hence, the lymph becomes stagnant. When the lymph is blocked, poison accumulate in lymph vessels and nodes.

As the toxins multiply they eventually over run the system. Ultimately, they manifest as some form of sickness, ranging from mild illnesses to chronic disease to the life threatening cancer.

23. The following diseases run in Plaintiff's immediate family causing or contributing to family members' deaths: congestive heart failure, high blood pressure (father); congestive heart failure, high blood pressure, asthma, respiratory problems, diabetes (mother); Colon cancer (sister); Lung cancer (brother); high blood pressure, liver disorders, diabetes (brother).

24. Plaintiff is presently inflicted with the following diseases and illnesses: prostate cancer; hepatitis C, Chronic Obstructive Pulmonary Disease (COPD); Gastro-esophageal Reflux Disease (GERD); Cervical and Lumbar spinal diseases; sinus disease; year round allergies; intense chronic pain; impaired immune function; chronic bacteria and fungal infections; chronic migraines; Hypertension; High Cholesterol/Triglycerides; Hyperlipoproteinemia; and tuberculosis history (PPD). (See Exhibit A — I)

25. Plaintiff has a history with abnormal heartbeat (bradycardia). (Exhibit D)

26. Recent medical tests suggest that the prostate cancer may have spreaded to the lower and upper spine and skull., among other places.

27. Plaintiff's chronic bacteria and fungal infections are a result of impaired immune system secondary to hepatitis-C.

28. Plaintiff has been inflicted/burdened with an emotional handicap since birth.

29. Stress production is an ideal weapon for Defendants' because it is easily produced and difficult to connect to the offender's acts, or the resulting damage caused (a prime example can be found in the numerous suicide deaths that occur in solitary isolation that were actually the result of staff abuse).

30. Plaintiff is in imminent and ongoing danger of serious injury and/or death as a result of Defendant's retaliatory stress production tactics.

31. Because of Plaintiff's age, preexisting illnesses/diseases and constant abuse, he is in imminent/ongoing danger of serious physical and psychological as a result of contracting new illnesses (particularly cardiovascular diseases and the many illnesses associated with his liver disease and cancer) worsening/aggravations of his present illnesses, and prevention from healing and repair of his conditions, as a result of Defendants' retaliatory stress production tactics.

31. Hostility — which in this case is constantly manufactured by Defendants' cowardly, barbaric, and sadistic acts, is associated with increased levels of circulating cate-holamines and increased lipid concentrations — risk factors for coronary heart disease; states of fear, excitement, and acute anger reduce blood flow through atheros-cleratic coronary segments, and provoke coronary spasm, thus causing abnormal left ventricular wall motion and electrocardiographic evidence of myocardial ischemia.

32. Defendants has also intentionally allowed Plaintiff's health to deteriorate for years by subjecting him to punitive diets, unsanitary meals, refusing to prescribed a diet that would benefit his many conflicting nutritional needs, and by refusing to allow him to make arrangements to take care of his own nutritional needs, thereby preventing healing and repair, and promoting the growth and spread of cancer.

33. Defendants' has, and continue to, interfere with his attempts to obtain needed diag-nosis and treatment of his cancer, by subjecting him to abusive and disrespectful care, falsifying medical reports, and related documentation, repeatedly denying him access to his medical files, and employing tactics designed to discourage him from submitting to the care offered, while Wolf has repeatedly refused to intervene.

34. Defendants have flat-out denied medical care for HCV for retaliatory and financial reasons, and has falsified medical records and related documents in attempts to pro-vide justifications for such denial.

35. Defendants' has also even refused to provide adequate diagnosis and treatment for the serious conditions caused by Plaintiff's liver disease, especially impaired immune

-8-

functions, and weight loss.

36. <u>All</u> defendants are heavily involved in the retaliatory efforts against Plaintiff.

37. At all relevant times involving this matter, CCS and its employees Cowan, Miceli, Jin, Cowden, Ridings, Valley, Austin, and Hice were contracted with the Pa D.O.C. to provide "quality" healthcare to its prisoners, and were employed in various capacities at SCI-Greene and SCI-Fayette.

38. Defendant CCS have a contractual duty to provide prisoners with quality health care and access to health care professionals, prescribed treatment, for serious medical needs, appropriate nutrition, exercise, and personal hygiene.

39. CCS provides healthcare in prison under the HMO model, with emphasis on cutting cost—except prisoners have no other options to obtain medical care except through these contractors.

40. Like most contractors that provide prison related services, CCS tends to cut costs in terms of staffing and operational expenses, this includes paying lower wages, proving fewer or inferior benefits and hiring less qualified workers who can be paid less.

41. Medical contractors were hired by Pa D.O.C. to cut costs, but not deny or delay needed quality healthcare, or provide sub standard healthcare.

42. Litigation is not a compelling issue within the prison health care industry and Defendants views prisoner lawsuits as simply a cost of doing business; and, most prisoner lawsuits are settled for an average of $50.

43. In order to cut medical expenses for the DOC while at the same time making a profit, Defendant CCS specializes in providing substandard care to the prisoners; which plays a major role in their ability to underbid others competing for DOC contracts.

44. In order to turn a profit, Defendant CCS cannot provide prisoners with healthcare in the same manner and quality that are generally practiced in their respective communities.

45. Defendants practice of providing sub standard healthcare to prisoners has resulted in large amounts of prisoner litigation, which not only cut into their profits, but also draw scrutiny from the state Medical Board, since laws — 40 P.S. §1303.901 — requires

-9-

physicians to report to the Board all complaints in a medical professional liability action filed against them.

16. In an attempt to increase profits and prevent scrutiny from the State Medical Board, Defendant CCS and their employees have adopted the Pa D.O.C. retaliation policy.

17. Defendant CCS and its employees Cowan, Jin, Valley, Hice, Ridings, Austin —and others, played major roles in punishing Plaintiff during the latter part of his confinement at SCC-Greene by committing the following acts/inactions:

  (i). Cutting Plaintiff's supplemental diet in June, 2017;

  (ii) Cutting Plaintiff's pain medications;

  (iii) Falsifying medical records; and, approving of the attacks on Plaintiff.

  (iv) Refusal to provide access to pain specialist;

  (v) Refusal to provide access to dietician;

  (vi) Refusal to provide a complete nutritional assessment;

  (vii) Refusal to make any meaningful attempts to resolve the problems that prevented his receipt of adequate diagnosis and treatment for prostate cancer;

  (viii) Refusal to provide adequate diagnosis and treatment for bacteria and fungal infections;

  (ix) Refusal to provide devices, a chair, wheelchair, or therapy for his severe neck, lower back, and shoulder diseases;

  (x) cutting of his sinus/allergy medication;

  (xi) refusal to provide sufficient pain relief;

  (xii) sabotaging Plaintiff's numerous attempts to submit to tests, including the giving of blood for testing purposes; and

  (xiii) committing acts specifically designed to arouse his suspicions about their offers of invasive diagnostic procedures (especially Nicoli's claim that I lost my patient rights after I was convicted and sentenced, while Plaintiff was attempting to resolve the problems that stood in his way of cancer treatment).

48. Defendants CCS and its employees Hice, Jin, Miceli, Cowden, Cowan — and others, has played a major role in his punishment and transfer to SCI-Fayette by committing the following acts/inactions:

(i) refusal to prevent the attacks on Plaintiff;

(ii) conspiring in Plaintiff's transfer to SCI-Fayette;

(iii) denying Plaintiff pain relief and/or providing intentional ineffective relief;

(iv) inadequate and perfunctory sickcalls;

(v) mocking examinations;

(vi) refusal to provide sinus/allergy medication;

(vii) refusal to prevent weight-loss;

(viii) refusal to provide care designed to boost the immune system, promote prostate health, and fight cancer that has been repeatedly sought by Plaintiff;

(ix) refusal to provide chair, wheel chair pass, front cuff pass, devices, therapy, or hot/cold packs for back, neck, and shoulder diseases and resulting pain;

(x) refusal to afford Plaintiff an opportunity to view and copy previous test results in his medical files, which was the only major obstacle in his way of a prostate byopsy;

(xi) attempting to force harmone therapy treatment on Plaintiff despite the facts that Plaintiff instructed Miceli to give him a week to investigate the proposed treatment; there were no basis for prescribing harmone therapy treatments because the cancer had not been staged and graded; there was no actual proof that Plaintiff even had cancer; and, harmone therapy had numerous risks and side effects;

(xii) prescribed harmone therapy specifically to cause serious harm to Plaintiff;

(xiii) refused to provide pain relief in attempts to force Plaintiff to submit to invasive diagnostic procedures; and,

(xiv) conspiring with Pa DOC Defendants to cause Plaintiff's death and/or serious injury.

39. Defendants are simply using their combined power and political clot to ensure Plaintiff's demise.

40. Defendants are extremely perturbed over Plaintiff's refusal to unconditionally submit to their offers of medical care and his demands for respect of his rights as a patient.

41. Defendants Grego, Varner, Burns, Wetzel, Capozzi, Shawley, House, Gilmore, Noel, Silva, Nicholson, Weinhold, Facility Infection Control Nurses at SCI-Greene and SCI-Fayette — and others, have conspired with C.C.S. and staff, to deny and prevent Plaintiff from obtaining adequate, meaningful, and respectful medical care for his serious illnesses, and have committed the following acts/inactions in support of same; while Wolf will not use his authority to prevent the attacks:

(i) refusing to enforce Pa D.O.C. Rules and Regulations, and State Laws pertaining to prisoners healthcare;

(ii) refusal to enforce contract terms;

(iii) refusal to report and document Plaintiff's bacteria infections in accordance with the Pa D.O.C. Communicable Disease and Infections Control Policies;

(iv) preventing Plaintiff from gaining access to his medical files;

(v) falsifying medical records;

(vi) refusing to conduct impartial and complete investigations of Plaintiff's complaints of medical abuse, mistreatment, and neglect;

(vii) placing Plaintiff on bogus grievance restriction to prevent his formal complaints from being officially documented and relieving them of the duty of investigating/ responding to same;

(viii) refusing to process Plaintiff's "Inmate Abuse" claims in accordance with DC-ADM 001;

(ix) sabotaging of Plaintiff's attempts to obtain disability accommodations (DC-ADM

006).

(x) falsely accusing Plaintiff's grievances of being _frivolous_ to avoid addressing their merits and conducting investigations;

(xi) refusing to allow plaintiff to provide for his own nutritional needs; and

(xii) refusing to enforce the P.A.D.O.C. master menu or policy that governs preparation and serving of inmate meals (DC-ADM 610).

42. Defendants Wetzel, Oppman, Cutler, Mail Room Supervisor, Capozzi, House, Buzas, and Haines, to produce stress and sabotage the prosecution of Plaintiff's active and planned legal activities, have committed the following acts/inactions:

(i) Refusal to enforce or implement policy governing outgoing inmate indigent legal mail; and, denying him access to his stored legal property;

(ii) Rejecting Plaintiff's attempts to mail documents to the Courts, attorneys, and state agencies on grounds that the envelopes used to mail the documents are contraband;

(iii) advising Plaintiff that he could continue to make his own envelopes, then confiscating them when he attempts to mail them;

(iv) refusing to provide indigent prisoners with envelopes to mail legal documents;

(v) refusing to allow Plaintiff to provide for his own legal supplies;

(vi) refusal to provide adequate postage and photocopy services for Plaintiff's legal filings;

(vii) sabotaging Plaintiff's attempts to resolve these problems via the Inmate Grievance System;

(viii) denying Plaintiff access to legal information contained in the prison law library that is available to General population and Death Row Inmates;

(ix) sabotaging Plaintiff's access to information contained in the State Library; and

(x) withholding documents sent to be photocopied.

43. Plaintiff has, and continue to suffer legal injuries as a result of Defendants acts/inactions listed in paragraph No. 42 (i-x)

44. Defendants House, Grego, Capozzi, and Burns conspired to place Plaintiff on bogus grievance grievance restriction on the false grounds that the following grievances were "frivolous" ("A grievance is frivolous when it is found that the allegations or the relief sought lack any arguable basis in law, fact and/or policy" [See Definitions, DC-ADM 804]):

(i) No. 691366, dated 8/18/17 (grieved being denied relief from conditions that initiate migraines, including protection from the bright cell lights that is on 24 hours a day, and the constant RHU noises. Sought ear plugs, shades, and medication. Denied by Defendant Grego on 8/25/17);

(ii) No. 692970, dated 8/22/17 (Grieved denial of access to sickcall on 8/21/17 to address weight loss/nutrition problems. Denied on 8/25/17 by Defendant Grego);

(iii) No. 692999, dated 8/23/17 (Grieved Cowden's refusal to diagnose and treat digestion problems caused by GERD. Denied by Defendant Grego on 8/25/17);

(iv) No. 693427, dated 8/25/17 (Grieved Defendant House's attempts to sabotage Plaintiff's grievance filings by refusing to return/provide a copy of the exhibits attached to grievance with the grievance receipt. Denied on 9/1/17 by Lori A. Allen);

(v) #643903, dated 8/  (Grieved inadequate sickcall conducted by Defendant Cowden on 8/21/17 with regard to allergies, interalia. Denied on 9/7/17 by Defendant Grego);

(vi) No. 693998, dated 8/24/17 (Grieved the disrespectful and unprofessional treatment from Defendant Cowden on 8/28/17, which was calculated to bait Plaintiff and cause emotional damage, providing PaO.C. and C.C.S. with justification to continue medical neglect and abuse, interalia. Denied by Defendant Grego on 9/7/17); and

(vii) No. 694913, dated 9/5/17 (Grieved Cowden's refusal to provide snack-bag for medication purposes. Denied by Defendant Grego on 9/7/17).

45. A complaint is frivolous if it lacks an arguable basis either in law or fact." Neitzke v. Williams, 490 U.S. 319, 327 (1989). A complaint is legally frivolous if it fails to raise

an arguable question of law" or is based on an "indisputably meritless legal theory." Id. at 327-28. A complaint is factually frivolous if the "claims describe fantastic or delusional scenarios (Id. at 328), which means that the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them Denton v. Hernandez, 504 U.S. 25, 31-32 (1992). For example, one court observed "Examples of claims lacking rational facts are prisoner petitions asserting that Robin Hood and his Merry Men deprived prisoners of their access to mail or that a genie granted a warden's wish to deny prisoners any access to legal texts." Lawler v. Marshall, 898 F.2d 1196, 1199 (6th Cir. 1990).

16. Additionally, Defendant House clearly "back dated" the "grievance restriction" to 9/3/17 in an effort to prevent the filing of the following grievances:

(i) No. 695603, dated 9/3/17 (Grieved Defendant Gregg's refusal to allow Plaintiff to view/copy documents in medical files and its impact on the receipt of medical care for cancer. Rejected on 9/11/17 by House because of grievance restriction);

(ii) No. 695624, dated 9/8/17 (Grieved "medical staff refusal to provide the requested safe and effected support/treatment for ... prostate cancer, including: the vaccine Sipuleucel-T [Provenge], in attempts to boost my immune system to help attack cancer cells; dietary supplements (such as Green Tea, Lycopene, Citrus Pectin, Pomegranate, Soy Isoflavones; and, combination therapies such as Pomi-T, zyflamend, and the like) which has been proven to lower PSA, hinder the spread of cancer, and/or generally aid prostate health. Rejected by House on 9/11/17 because of Grievance Restriction);

(iii) No. 695625, dated 9/8/17 (Grieved not being allowed to supplement own diet. Rejected by House on 9/11/17 because of Grievance Restriction);

(iv) No. 696132, dated 9/13/17 (Grieved the sabotaging of outgoing legal mail. Rejected by House on 9/13/17 because of grievance restriction);

(v) No. 695700, dated 9/11/17 (Grieved conspiracy to hinder, frustrate, and prevent meaningful prosecution of criminal/civil legal matters... Rejected by Nifkin on 9/11/17 because of Grievance

restriction).

(vii) No. 695702, dated 9/11/17 (Grieved RHU staff games of cutting off cell lights. Rejected by House on 9/11/17 because of Grievance Restriction);

(vii) No. 695704, dated 9/11/17 (Grieved attacks by prison staff, including the refusal to provide morning medication; denial of lunch; and refusal to provide pain relief after return from Hospital. Rejected by House on 9/11/17 because of Grievance Restriction);

(viii) No. 695705, dated 9/11/17 (Grieved Medical staff refusal to provide timely refills of prescribed medications. Rejected by House on 9/11/17 because of Grievance Restriction);

(ix) No. 695707, dated 9/11/17 (Grieved staff refusal to return photocopies. Rejected by House on 9/11/17 because of grievance restriction)

47. Prior to grievance restriction assignment, Defendants House and Capozza conspired to reject the following grievances in attempts to avoid their merits:

(i). No. 693008, dated 8/23/17 (Grieved kitchen staff failure to change trays, and the resulting risks to his liver and lung diseases. Rejected on 8/23/17 by Defendant House on frivolous grounds that it was not submitted within 15 working days, despite fact that Petitioner had not even been in the institution 15 working days when the grievance was filed)

(ii) No. 693421, dated 8/24/17 (Grieved the conspiracy surrounding Plaintiff's transfer to SCI Fayette — involving Defendants Wetzel, House, Grego, Cutler, Oppman, Varner, Burns, Capozza, Gilmore, CCS, Silva, Nicholson, Micali, Jin, Director Doe, Hice, Cowden, and other unknowns — designed to continue the major retaliatory effort against him, prevent medical diagnosis and treatment of his serious illnesses, and subject him to more harmful conditions [see Exhibit. J]. Rejected by Defendant House of 8/25/17, on the bogus grounds that it was not filed within 15 working days [despite fact that Plaintiff had not been housed in the prison for 15 working days at the time the grievance was filed], the grievance involved matters that occurred at a-

nother facility" [despite fact that complaint involved conspiracy between multiple D.O.C. staff at three (3) different locations]; and, "Grievance based upon different events" [despite fact that grievance was <u>based</u> upon a <u>conspiracy</u> but <u>involved</u> different events]).

(iii) <u>No. 693433</u>, dated 8/25/17 (Grieved conditions at SCC-Fayette that have an immediate adverse effect on Plaintiff's health/chronic conditions, including: No hot water; kitchen practice of not cleaning trays; and, allergic reactions to environment [See <u>Exhibit-I1</u>]. Rejected on 8/25/17 by Defendant House on grounds that the grievance was not submitted within the 15 work day time limit [despite fact that Plaintiff had not been housed in the Institution 15 work days at the time of filing]; and because "grievance was based upon different events" [despite fact that complaint was clearly based upon condition at the prison that adversely effected his health]).

(iv) <u>No. 694923</u>, dated 9/5/17 (Grieved Cowden's ___ and whom ever she's working under ___ refusal to provide adequate medical care for fungal and bacteria chronic skin blood infections [<u>Exhibit-I2</u>]. Rejected on 9/6/17 on grounds that the issue was presented in grievance <u>No. 693998</u> [despite fact that the instant grievance involved Cowden's refusal to fulfill her promise to provide medication for infections; while No. <u>693998</u> concerned Cowden's disrespectful and unprofessional examination of 8/28/17]).

43. Defendant Nedra Grego and her subordinate (Ken Randolph), also sabotaged Plaintiff's attempts to obtain crucial medical care via the following grievances:

(i) <u>No. 691950</u>, dated 8/16/17 (Grieved being denied basic support care and medical information by Defendant Cowden, including documents reflecting the risks and side-effects of Plaintiff's prescribed medications; and, a wheelchair pass for times when pain prevented him from walking. Defendant Grego denied relief on 8/22/17, despite the facts that Plaintiff have a right to the medical information like <u>all</u> patients; and <u>no</u> tests were conducted by Cowden to support her refusal to provide the wheelchair pass [indeed

the "wheelchair pass" would normally be provided as a precaution in other similar situations by unbias medical profession]).

(ii) No 694596, dated 9/1/17 ("Grieved the psychological games and mistreatment by Dr. Miceli on 8/23/17, while I was attempting to resolve problems surrounding diagnosis and treatment for prostate cancer. Firstly, he intentionally refused to allow me to view my medical files that were present during the examinations/interview, which he knew from previous meetings was a major problem interfering with my decision regarding said diagnoses and treatment... . Secondly, Miceli next stated that he was going to forego the prostate biopsy and start treatment immediately with Hormone Therapy, stating it would make you feel better. However, he made this offer with the knowledge that I was aware of the fact that cancer treatment is not started until after staging and grading of the cancer had been conducted... . Thirdly, he accused me of being abnormal simply because I demanded respect for my rights as a patient... ." This complaint was denied 9/8/17 by one Ken Randolph, Registered Nurse Supervisor, who fail to address all issues raised in the complaint in violation of the grievance policy, but also made false claims regarding what occurred during the 8/23/17 interview, and actually labeled the grievance frivolous.

49. Defendants' agents/employees who contributed to the retaliation campaign while Plaintiff was caged at SCI-Greene include but not limited to the following: Deputy D. Alexandro; Sgt. Tikey; Capt. Schrader, Lt. Medvic; C.O. Keller, C.O. Carter; Dr. Park; Dr. Alpert; Dr. Malhi; Lt. Stickler; C.O. Mihalsky; K. Petty; J. Watson; Nurse Witmore, Nurse Felton; Todd H. Funk; Neda Grego; Major Leggett; John Mc Anany; Kyle Guth; Stacy Liberatore; C.O. Imhoff; Lt. Lewis; Lt. Harvella; Lt. Braunlich, Lt. Williams; Lt. Dephillips; Sgt. Finley; Sgt. Young; Sgt. Smith; C.O. Eagles; C.O. Blanchard; J.R. Beahout; Elan Mwaura; C.O. Hawraker; C.H. Oppman; M. Gordan; Lt. R Fox; Mindy Anelisetti; Sgt. Santi; C.O. Morris; C.O. Gater; Lt. Ramirez; C.O. Phillips; C.O. Nepdion;

-18-

C.O. S. Drew; C.O. Kozarovich; Sgt. Nelson; Wm Nicholson; C.O. Jellots; C.O. Hollowood; C.O. Barnhart; Counselor Stella; U/M Longstreth; C.O. Elynoff; Sgt. Bowlin; Dr. Valley; PA. Austin; Nurse Burton; Dr. Santos; Nurse Booker; Nurse Volts; Nurse Blater; Nurse Mckim; Nurse Zebley; Nurse Meighen; Nurse Chambers; Nurse King; Nurse Gray; Nurse Tomarsky; Nurse Walters; Nurse Tate; Sgt. Mc Crackin; Sgt. Kanfelt; Nurse Pokol; C.O. Jones; C.O Coulin; C.O. Barry Jordan; Mike Zakin; A.J.Morris; T.Poziviak; C.O.R. King; L.S Keras-Barr; Robert Rich; S. Sil- baugh; J.E. Gardner; Dean Gechris; Karen Patterson; Irma Vihlidal; M Tioyan; E.T.Gumbert; B. Jin; Frank Trout; Captain Darco; and J.H. Dupont

50. Plaintiff is in imminent/ongoing danger of serious physical, emotional, and psycholo- gical injury as a result of Defendant's retaliatory practice of refusing to handle his INMATE ABUSE claims in accordance with policy DC-ADM 001, including

 (i) Falsely claiming that attacks don't fit within the definition of "inmate abuse";

 (ii) Refusing to interview Plaintiff, and, failure to preserve incriminating evidence;

 (iii) Refusing to interview Plaintiff's witnesses; and,

 (iv) Filing false investigation reports.

51. Plaintiff is also in imminent/ongoing danger as a result of Defendants' Wetzel, Grego, House, Burns, Gilmore, Shawley, Varner, Silver, Noel, and/or their agents and em- ployees refusal to process his prison grievances in accordance with the Rules and Regulations that governs the <u>Inmate Grievance System</u>, which leaves him without a quick-fix remedy for his serious medical needs and the physical and psychological abuse, including:

 (i) Frivolous rejections of valid grievances to avoid addressing their merits;

 (ii) Making false and mocking responses while generally refusing to follow procedure;

 (iii) Refusal to act impartial, failing to view and preserve evidence, make a complete in- vestigation; refusal to assign appropriate Grievance Officers to handle grievance, and sabotaging Plaintiff's attempts to appeal to Central Office.

52. Prime examples of Defendants/Agents sabotaging tactics involving Plaintiffs grievance filings while confined at SCI-Greene is as follows: No. 620867 (sought transfer to facility were he could feel safe and be free of attacks while undergoing diagnosis and treatment for cancer. Grievance REJECTED on grounds that it was not submitted timely; No. 601488, dated 12/1/15 (Grieved the conspiracy by Defendants/Agents to retaliate against him. REJECTED on grounds that it related to the Inmate Misconduct Procedure, was not submitted timely, and involved different events that must be grieved separately); No. 621173 (grieved Defendants refusal to comply with policy and mail Plaintiffs legal documents to Court and parties via certified mail in accordance with DC-NOM 803, Procedural Manual, Section 1 (B)(3)(b)(1). It was rejected on grounds that it was untimely; No. 627175 (Grieved staff refusal to provide him with an Inmate Disability Accommodation Request Form in accordance with DC-NOM 006. Claimed grievance was FRIVOLOUS, while employing the pass-the-buck tactic to continue denial of access to same); 620890 (Grieved Dentist refusal to provide denture bowl. Claimed that Dentist was not allowed by policy to provide same) No. 620899(2)(Grieved the Security Department's attack on him and their sabotaging of his efforts to get the Superintendent to inhate an investigation (Criminal) into C.O. Conklin's false misconduct report claiming that he searched Plaintiffs cell on 3/29/16 and found a razor blade, when the Pod Video tapes will show he did not such thing and was not even in the area during the search. Rejected on grounds that it involved the Inmate Disciplinary Procedure, DC-NOM 801); No. 620899(1), dated 4/6/16 (a similar version of No.620899(2), but instead was based upon a retaliation claim. It was rejected on same grounds as No. 620899(2); No. 618516, dated 3/29/16 (Grieved the continued denial of access to medical records, that was needed for purposes of making an informed and prudent decision regarding cancer diagnosis and treatment. Response dated 5/25/16 claimed he was on "waiting list"; that he was initially placed on 10/30/15); No. 609250 (Grieved confederacy between P6 D.O.C. staff formed for

the purpose of committing, by their joint efforts, unlawful and criminal acts, some of which are lawful, but became unlawful when done by the concerted acts of the conspiracy", or for the purpose of using criminal or unlawful means to the commission of an act not in itself unlawful", which was based upon the Defendants retaliation campaign against him, and carefully worded in yet another attempt to have the matter addressed via the grievance and Inmate Abuse procedures without being REJECTED on grounds that "involved different events that must be grieved separately". However, it was yet again REJECTED on same grounds); No. 602913 (Grieved the retaliatory confiscation and sabotaging of his cell property after he was gassed on 10/23/15. Falsely claimed that grievance was repetitive and frivolous, and that the matter had been addressed in grievance Nos. 601630, 600415, 593269, and 591965); No. 602902 (sought access to the following case files before the running of Court order deadlines: Brown v. Secretary Pa. D.O.C., #15-3025 (3d. Cir. Ct. App); Brown v. Pa. D.O.C., #1477 CD. 2015 (Pa. Cmwlth. Ct.); Commonwealth v. Brown, #564 MT 2015 (Pa. Sup. Ct). Plaintiff was not only denied relief, but was also issued a bogus misconduct on clear false grounds that Plaintiff lied when he claimed in the grievance that he sought relief from staff prior to filing the grievance (M/C No. B747417]); No. 620879 (Grieved staff refusal to provide him with carbon paper, typing paper, stamps, or allow him to purchase same from "approved" outside sources. Rejected on ridiculous grounds that it was untimely); No. 620873 (Grieved refusal of staff to allow him to supplement his nutritional needs from approved outside sources, including via nutritional programs sponsored by the Pa. Department of Aging. The complaint was rejected as time barred.

53. Defendants Wetzel, Varner, Burns, Shawley, Gilmore, and/or their agents also refused to process Plaintiff's "Inmate Abuse" complaints in accordance with DC-ADM 001, or fail to ensure to such complaints were processed, in order to support the major retaliation campaign against Plaintiff at SCI-Greene, that were raised in the following

Grievances and Requests: Complaint initially filed with the Pennsylvania Inspector General that was forwarded to Defendant Wetzel on July, 2015, for disposition; No. 601488, dated 12/1/15; No. 592138, dated 11/13/15; No. 631513, dated 6/21/16; No. 636156, dated 7/28/16; No. 636783, dated 8/2/16; No. 640074, dated 8/24/16; OC-135A, dated 8/11/16; No. 640071, dated 8/24/16; No. 597700, dated 11/3/15; No. 642-834, dated 12/9/16; No 644841, dated 9/26/16; #634313, dated 8/19/16; #695839, dated 12/3/16; #630862, dated 4/31/16; #_____, dated 9/21/16; #609250, dated 1/25/16; #596791, dated 11/9/15; #599433, dated 11/23/15; # 575616, dated 7/6/15; #604744, dated 12/30/15; #606831, dated 1/14/16; #611653, dated 1/25/16; #615094, dated 2/29/16; #604713, dated 12/30/15; #604743, dated 12/30/15; #OC-135 A, Dated 2/18/16; #573416, dated 7/28/15; #656922, dated 12/19/16; #658225, dated 12/29/16; #OC-135A, dated 7/26/16; #658560(1), dated 1/3/17; #658560(2), dated 1/9/17; #661523, dated 1/30/17; #661528, dated 1/23/17; #662119, dated 1/26/17; #663900, dated 2/7/17; #665186, dated 3/13/17; #665432, dated 3/21/17; #667558, dated 3/7/17; #668223, dated 3/10/17; #668227, dated 3/10/17; #668229, dated 3/13/17; #OC-135A, dated 3/21/17; #670766, dated 3/29/17; #671484, dated 4/3/17; #672019, dated 4/6/17; #672832, dated 5/23/17; #678825, dated 5/22/17; #OC-135A, dated 4/14/17; #682904, dated 6/19/17; #683236, dated 6/21/17; #683531, dated 6/23/17; #OC-NOM 001 Complaint to Defendant Wetzel, dated 6/26/17; #684152, dated 6/28/17; #684630, dated 6/30/17; #685627, dated 7/7/17; #_____, dated 7/21/17; #688156, dated 7/24/17; #685552, dated 7/26/17; #688185, dated 7/21/17;

54. In furtherance of the major retaliatory campaign against Plaintiff, Defendants Wetzel, Gilmore, Burns, Dupont, and/or their agents and employees, subjected Plaintiff to numerous bogus misconduct reports and convictions in violation of the Rules and Regulations that governs Disciplinary Procedure, including but not limited to the following:

(1) Allowed misconducts to be written/processed in violation of policy and procedure;

(2) Refused to allow Plaintiff to submit documentary evidence in his defense;

(3) Refused to allow Plaintiff to call relevant witnesses in his defense;

(4) Refused to collect videotape evidence needed for the defense;

(5) Allowed misconduct to proceed in violation of time limitations;

(6) Refused to allow Plaintiff to participate in the proceedings;

(7) Bias dismissal of Reports, without prejudice, calculated to give staff the advantage;

(8) Refusal to provide sufficient reasons for finding Plaintiff guilty, and the punishments imposed;

(9) Refusal to allow Plaintiff adequate notice of the charges to enable him to form a defense to same;

(10) Allowing staff to change their versions of the charged violations in a second report;

(11) Penalizing Plaintiff for exercising his right to be provided 24 Hour notice of the charges

55. The following retaliatory misconduct reports were issued to Plaintiff at SCI-Greene: #A55 542 (dated 10/27/15); #A325 397 (11/11/15); #B747417; #B880761; #B855613; #B747542; #B880770; #B880773; #No.B880404; #B880658; #B855198; #B880510; #B880581; #B880582; #B991689; and, others.

56. Bogus misconduct reports/convictions are a favorite retaliation tool of the Defendants because they have complete control over the misconduct procedure, and they have extremely adverse impacts on the victims quality of prison life, etc.

57. In furtherance of the major retaliation campaign against Plaintiff, Defendants Wetzel, Varner, Gilmore, Burns, Shawley, and /or their agents and employees placed Plaintiff on GRIEVANCE RESTRICTION at SCI-Greene, or approved of same, three (3) times — April 10, 2017; June 22, 2016; December 30, 2015, by falsely claiming that the following grievances were frivolous: Nos. 669019, 668553, 668279, 668227, 668223 (April 10, 2017); 630324; 630114, 628484, 627024, 627027, 626085 ( June 22, 2016)

and, 602913, 602901; 601914, 601906, 601630, 600415 (December 30, 2015)

58. "Grievance Restriction" normally is employed by Defendants shortly before or after a new intensified episode of retaliation is inflicted upon Plaintiff.

59. Plaintiff has, and will continue to suffer numerous and substantial legal injuries as a result of Defendants continuous sabotaging of his legal efforts (planned and active) including but not limited to the following matters:

(i) Commonwealth v. Brown, #1597 EDA 2014 (Super. Ct);

(ii) Commonwealth v. Brown, # 100 MM 2015 (Sup. Ct.);

(iii) Brown v. Wiercowicz, et al. #630 C.D. 2015 (Pa. Cmwlth. Ct.);

(iv) Brown v. Jarrett, #030302849 (Phila. Cty.);

(v) Brown v. Wetzel, et al. No. 506 M.T. 2015 (Pa. Sup. Ct.);

(vi) In re Private Criminal Complaint of Alton D. Brown, #570 MT 2015 (Pa. Sup. Ct.);

(vii) In re Complaint of Judicial Misconduct Or Disability, JC Nos. 03-15-90039 — 03-15-90055;

(viii) Commonwealth v. Brown, No. 564 MT 2015 (Pa. Sup. Ct.);

(ix) Brown v. D. Guglielmo, et al. #07-3771 (U.S. Dist. Ct. E.D.);

(x) Brown v. Treasury Department, #1675 C.D. 2015 (Pa. Cmwlth. Ct.);

(xi) Brown v. State Police, #1674 C.D. 2015 (Pa. Cmwlth. Ct.);

(xii) Brown v. Pa. Commission on Sentencing, #1869 C.D. 2015 (Pa. Cmwth. Ct.);

(xiii) Brown v. Secretary Pa. D.O.C, #15-3085 (3d Cir. App.);

(xiv) Brown v. Pa. Historical and Museum Commission, No. 2059 C.D. 2015 (Pa. Cmwlth Ct.);

(xv) Brown v. Kramer, et al. #732 MT 2015 (Super. Ct.);

(xvi) Brown v. Wetzel, et al. #313 M.D. 2015 (Pa. Cmwlth. Ct.);

(xvii) In re: Private Criminal Complaint of Alton D. Brown, #0578-2015 (Dauph. Cty.);

(xviii) Brown v. Pa. D.O.C. #83 W.T 2015 (Sup. Ct.);

(xix) Commonwealth v. Brown, #2056 EDA 2015 (Super. Ct.);

(xix) Brown v. Dept of Aging, #1700 C.D. 2015 (Pa. Cmwlth. Ct.);

(xxi) <u>Brown v. Pa D.O.C.</u>, No. 550 MT 2015 (Pa. Sup. Ct);

(xxii) <u>Brown v. Brinkman, et al.</u>, # 141202604 (Phila. Cty);

(xxiii) <u>Brown v. Wexford Health Sources, Inc., et al.</u>, # GD-15-10990 (Allegheny Cty);

(xxiv) <u>Brown v. Dept. of Labor and Industry</u>, No. 15-213 (Office of Open Records);

(xxv). <u>Brown v. Prison Health Services, Inc., et al.</u>, No. 15-1304 (3d. Cir. Ct. App),

(xxvi). <u>Grievance Appeal Nos.</u>: 582267; 587402; 621193; 619350; 560162; 560187; 560460; 565266; 560161; 560942; 556877; 559933; 561257; 558885; 558910; 563977; 562326; 561419; 561268; 563981; 628877; 628880; 629786; 630110; 630112; 630113; 630657; 630817; 630904; 631192; 602931; 606832; 615094; 628866; 627026; 628567; 622537; 623101; 623103; 624836; 626958; 627025; 627028; 627171; 627225; 577128; 618546; 618706; 619831; 620290; 621581; 622110; 622286; 622117; 622288; 622806; 622808; 621049; 624252; 624835; 626035; 626356; 627174; 602913; 601627; 595859; 596793; 602901; 601630; 600415; 601919; 602932; 599680; 599788; 591765; 598030; 601488; 601504; 601952; 597992; 595861; 599935; 603589; 604743; 602564; 603698; 693269; 602933; 604714; 603702; 604734; 603679; 603590; 600413; 604250; 611658; 602913; and others.

60. The calculated and precisioned sabotaging of Plaintiff legal efforts has severe consequences on his abilities to obtain post-conviction relief from his numerous unlawful convictions for crimes <u>he did not commit</u>, and relief from irreparable and deadly attacks on his health (inter alia).

61. Defendants Wetzel, Gilmore, Burns, Shawley, and others working in concern with them, intentionally sabotaged Plaintiffs trial and prosecution in the case of <u>Brown v. Dugan, Brinkman, Maginnis, and Pate</u>, # 141202604 (Phila Cty ), by falsely informing the Court and/or supporting such, that Plaintiff refused to attend the Trial on 10/19/16, which was done to punish Plaintiff and support the Defendants in case # 141202604, because of the support they provided to Pa D.O.C. in the underlying case to that case. (<u>Brown</u>

DiGuglielmo, et al. #07-3771(U.S. Dist Ct., E.D). This attack was also specifically designed to _____ a substantial psychological and emotional impact on the Plaintiff, which is why C.O. Poziviak was used as the "pointman" in the attack, as Poziviak participated in the vicious attack and framing of Plaintiff while he was chained to a hospital bed in October 2015, and issued Plaintiff a bogus misconduct report on 2/24/16 (# B830412: "Threatening an Employee or their family with bodily harm"; "using abusive, obscene, or inappropriate language to or about an employee").

62. Defendants Wetzel, Gilmore, Burns, Shawley, and/or their agents intentionally sabotaged Plaintiff's attempts to have Poziviak's claims investigated by mishandling grievance No. 649651, including the refusal to view and preserve vital videotape footage.

63. Defendants Wetzel, Gilmore, Burns, Cowan, Noel, Silva, Gordan, Valley, Jin, Varner, Shawley, Nicholson, Weinhold, Infection Control Nurses at SCI-Greene and SCI-Fayette, Austin, Hice, Ridings, and others working in concert with them, has not only refused to properly diagnose and treat Plaintiff's chronic bacteria infections for retaliatory/punishment purposes or support such refusal, but has also refused to handle and report the infections in accordance with the Pa. D.O.C "Communicable Disease and Infection Control" Policy (13.2.1, Access to Health Care Procedures Manual Section 8), which is being done so that they can continue to use the infection as a weapon for retaliation purposes (inter alia).

64. Defendants mentioned at paragraph No. 63 has also sabotaged Plaintiff's attempts to obtain relief from the major retaliation campaign by sabotaging his "Inmate Disability Accommodation Requests" submitted on 4/21/17 (no response as of this date); 12/23/16 (Not responded to as of this date); 10/23/16 (No answer as of yet); and 7/13/15 (DENIED without reason).

65. Defendants' retaliatory intent can be easily gleaned from the grievances and responses concerning Inmate Disability Accommodation Requests (Nos: 627175; 581611; 610074; 699514; and 651069).

66. DC-ADM 006 governs Inmate Disability Accommodation Requests.

RIGHTS INVOLVED

67. The First Amendment to the U.S. Constitution and related Pennsylvania provision, protects Plaintiff from being retaliated against by the government because of the exercise of constitutional rights, and provides for his rights of freedom of speech and association.

68. The Eighth Amendment to the U.S. Constitution and related Pennsylvania provision, protects Plaintiff from cruel and unusual punishments; including medical abuse/torture, and neglect; corporal punishments; unnecessary and excessive use of force; indefinite solitary confinement, and, psychological and physical torture.

69. The Fourteenth Amendment and related provisions of the Pennsylvania Constitution, gives Plaintiff the RIGHT to pursue Post-Conviction Relief in accordance with the Rules and Laws that governs such relief, including the right to do so in a meaningful and effective manner, without interference from the government.

70. The 1st and 14th Amendments, and related Pennsylvania provision, protects Plaintiff from being denied meaningful access of the courts by the Government.

71. The Due Process and Equal Protections Clause of the 14th Amendment, and related Pennsylvania provisions, protects the Plaintiff from being relegated to Political Prisoner Status by the Pennsylvania Government; as does numerous International Laws that are respected by same.

72. 37 Pa. Code, § 93.10, has the force of state law, and protects Plaintiff from being disciplined by Pa. D.O.C. without following the procedures that governs inmate discipline, including DC-ADM 801, (inter alia), and the 14th Amendment.

73. The First Amendment to the U.S. Constitution and 37 Pa. Code, § 93.9, prevents the government from retaliating against prisoners who file grievance complaints pursuant to DC-ADM 804.

74. Plaintiff has a right under State and Federal laws of Informed/Prudent Consent.

75. Plaintiff has a right under State and Federal Laws to medical care that is equal to that generally provided to free citizens.

76. Plaintiff has a right to be provided stationary, postage, and photocopy services

-27-

by the Government for his legal needs when he is financially unable to provide
for same, that is sufficient to meet his needs (14th Amendment and related Pennsyl-
vania provisions).

76A. Plaintiff has a legal right to the medical treatment/care outlined in DOC/CCS contract.

<u>Duties of Defendants</u>

77. Defendants have a duty to abide by the Laws, Rules, and Regulations mentioned in
paragraphs 67---76, which are mandatory, and which they have refused to do.

78. The Defendants have a duty to enforce the terms of the medical contract with
Correct Care Solutions and their employees, which they have fail to do.

79. Defendant CCS and its employees have a duty to abide by the terms of their medi-
cal contract with the Pa. D.O.C., which it has repeatedly refused to do.

80. Defendants have a mandatory duty to abide by Pa. D.O.C. Policy and Procedures, including
DC-ADM 001; DC-ADM 006; DC-ADM 802; DC-ADM 801, Policy 13.21; Policy 13.1.1;
DC-ADM 804; DC-ADM 610; DC-ADM 815; DC-ADM 803; and, other related procedures
of which Plaintiff likes access to.

81. Defendants Retaliation policy conflicts with the Defendants duties and obligations men-
tioned in paragraphs 77---80.

81. Plaintiff has no adequate remedy available to force the Defendants to perform their
mandatory duties and functions.

<u>NOTICE TO PLEAD</u>

82. Defendants are hereby notified to plead to this complaint within 20 days after
service hereof, or a default judgment may be entered against you.

<u>RELIEF SOUGHT</u>
Wherefore, the Plaintiff seeks the following relief:

(1) Declaration that the Plaintiff is entitled to the following:

   (i) Responses on the merits of <u>all</u> rejected grievances mentioned herein and in accordance
   with policy and procedure;

(ii) Responses on the merits of all grievances deemed frivolous mentioned herein and in accordance with policy and procedure;

(iii) Handling of all grievances in accordance with policy and procedure;

(iv). Removal of all misconduct reports from his prison files that were not processed in accordance with policy and procedure and applicable laws;

(v). Purchase his own legal supplies from approved outside sources, or in the alternative provided adequate supplies by Defendants, that meets his legal needs;

(vi). Purchase his own nutritional supplements from approved outside sources, or in the alternative provided same by the Defendants that meets his needs;

(vii). Official recognition as a POLITICAL PRISONER and benefits required by International Laws;

(viii). Adequate legal supplies for the prosecution of his post-conviction and conditions of confinement litigation;

(ix). Housing in a facility that has no adverse effects on his health;

(x). A meaningful review of his medical files;

(xi). Patients Rights that are not inconsistent with his status as a prisoner;

(xii). The Right of Informed Consent;

(xiii). Meals prepared and served in a sanitary manner;

(xiii). Release to general population;

(xiv). Investigations of his DC-ADA DOJ complaints in accordance with policy and procedure;

(xv). Handling of his "Inmate Disability Accommodation Requests" in accordance with policy and procedure;

(xvi). Adequate diagnosis and treatment for bacteria and fungal infections;

(xvii). Examination by pain, and nutritional specialists.

(xviii). Access to legal information contained in the prison main library that is a-

vailable to population and deathrow prisoners; and, legal and related information contained in the State Library.

(2) Preliminary and permanent injunctions enjoining Defendants, their agents and employees, and those acting in concern with them, as to the following:

(i) Any further retaliation against Plaintiff;

(ii) Immediate access to information that will allow him to make an _informed_ and _prudent_ decision regarding diagnoses and treatment for cancer;

(iii) Provide sufficient supplies for his legal needs, including paper, postage, envelopes, and photocopy services;

(iv) Immediate access to all legal information contained in the main library that is available to population and death-row prisoners;

(v) Immediate access to _all_ legal and related information contained in the State Library;

(vi) Immediate access to hot water;

(vii) Immediate access to devices and support care for his chronic and related illness, including but not limited to: wheelchair; sitting chair; hot/cold packs; neck, back, shoulder braces; front handcuff pass; and physical therapy;

(viii) Adequate diagnoses and treatment for his bacteria and fungal infections, including diagnoses, treatment, and reporting in accordance with _Policy 13.2.1_ "Communicable Diseases and Infection Control" section;

(ix) Any further censorship, withholding, and/or confiscations of his outgoing and incoming mail;

(x) Immediate and regular access to his stored legal property.

(3). Return or replacement of all confiscated property and books;

(4). Enter judgments against Defendants' for damages for their failure to perform a duty required by law, rules and regulations, which damages may be claimed pursuant to 42 Pa C.S. § 8303.

(5) Provide an adequate opportunity to present evidence demonstrating that he is in imminent/ongoing danger of serious physical, psychological and emotional injury as a result of Defendants' attacks.

(6). Grant such relief as may be just under the circumstances.

Date: September 27, 2017
Nov. 6, 2017 (Fay)

/s/ Justicia omnibus,
ALTON D. BROWN
DL 4686
SCC-Fayette
50 Overlook Drive
La Belle, PA 15450-

## VERIFICATION

I verify that the following statements are true and correct to the best of my knowledge, understanding and belief. I understand that false statements contained herein will subject me to the penalties of perjury pursuant to 18 Pa C.S. § 4904.

Date: September 27, 2017
Nov. 6, 2017 (Fay)

/s/ ALTON A BROWN

- 31 -